UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TAHJ T. EDDINGTON, | Case No.: 1:25-cv-00009 |
| *Plaintiff* | |
| v. | |
| CITY OF PROVIDENCE, through its Finance Director Sara Silveira, PROVIDENCE POLICE POLICE DEPARTMENT COLONEL OSCAR PEREZ, in his Official Capacity, OFFICER MANUEL VLAUN, OFFICER ANDREW BRODEUR, OFFICER MICHAEL SULLIVAN, OFFICERS JANE DOE and OFFICERS JOHN DOE, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT

Plaintiff, TAHJ T. EDDINGTON, by his attorneys BETHANY MACKTAZ and LISA HOLLEY, complains of CITY OF PROVIDENCE, PROVIDENCE POLICE COLONEL OSCAR PEREZ, PROVIDENCE POLICE DEPARTMENT OFFICERS MANUEL VLAUN, ANDREW BRODEUR, MICHAEL SULLIVAN, and OFFICERS JOHN and JANE DOES.

### INTRODUCTORY STATEMENT

This is an action for damages sustained by a citizen of the United States, and of the State of Rhode Island, against the City of Providence, by and through its Finance Director, and Providence Police Officers who unlawfully arrested, harassed, assaulted, battered, humiliated and maliciously prosecuted the Plaintiff, Mr. Tahj Eddington. This is also an action against

1

Providence Police Colonel Oscar Perez, as Commanding Officer responsible for the conduct of the police officers, for his failure to take corrective action with respect to police personnel, to assure proper training and supervision of the personnel, or to discourage lawless official conduct. The Plaintiff alleges violations of his civil rights under Rhode Island and Federal law as well as common law claims. The Plaintiff seeks justice through this action to hold those accountable for their misconduct.

## JURISDICTION AND VENUE

1. This is a civil action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States, and the corresponding articles of the Constitution of Rhode Island. Jurisdiction is therefore proper in this Court pursuant to 28 U.S.C. § 1331.

2. The amount in controversy exceeds one million dollars ($2,000,000.00), excluding interests and cost.

3. The incidents complained of occurred in the County of Providence, State of Rhode Island, and therefore, venue is proper in this judicial district.

## PARTIES

4. Plaintiff, Tahj Eddington, is a resident of the city of Pawtucket, within the State of Rhode Island and County of Providence.

5. Defendant Officers Manuel Vlaun, Andrew Brodeur, Michael Sullivan, and John and Jane Doe, upon information and belief, were at all times related hereto, residents of the State of Rhode Island, and at all times related hereto were employed by the Providence, Rhode Island Police as Providence Police Officers.

6. Defendant, Oscar Perez, upon information and belief, was at all times relevant hereto, a resident of the State of Rhode Island, and at all times relevant hereto, was employed by the Providence, Rhode Island Police as Colonel.

7. Defendant, City of Providence, Rhode Island is a municipality of the State of Rhode Island, which oversees the Providence Police Department. The Providence Defendants referenced above were employed by the City of Providence, and/or the Providence Police Department while conducting the investigation described in this Complaint. Defendant City of Providence is responsible for the policies and practices of the Providence Police Department.

## FACTUAL ALLEGATIONS

8. On August 18, 2023, Plaintiff was operating his motor vehicle in the City of Providence, while working for the Ride Share company Uber.

9. Plaintiff had an active Rhode Island Driver's License on the date and at the time of the motor vehicle accident.

10. Plaintiff was hired through the Uber application to pick up a passenger at a location in the eastside of City of Providence and to transport said passenger to another location in the City of Providence.

11. The Passenger in the Plaintiff's vehicle was identified as Mr. Dani Delacruz.

12. At approximately 2:32 am, after the Plaintiff suffered a medical emergency, the vehicle being operated by the Plaintiff mounted the curbing and struck a storefront located at 1093 Broad Street, Providence, Rhode Island.

13. The Defendant Providence Police Department was notified of the accident and Defendant Officers subsequently responded to the location.

14. Defendant Officer Andrew Brodeur first approached the Plaintiff's vehicle, wherein the Plaintiff was seated behind the wheel and the vehicle engine was running.

15. Moments later, Defendant Officer Manuel Vlaun arrived on the scene and also approached the Plaintiff's vehicle.

16. Both Defendants stood outside of the Plaintiff's vehicle near the driver's side door observing the Plaintiff.

17. At that time the Defendants approached the vehicle, Plaintiff's head was in a downward position and the Plaintiff's arms and hands were stiff and outstretched, holding onto the steering wheel.

18. Plaintiff was seemingly unaware of the Defendant Officers and was unresponsive to the Defendants' inquiry.

19. Defendant Vlaun instructed Defendant Brodeur to "Pull him out" referring to removing the Plaintiff from his vehicle.

20. Defendant Brodeur explained to Defendant Vlaun that "it's not in park" referring to Plaintiff's vehicle.

21. Defendant Vlaun then directed Defendant Brodeur to "put the car in park."

22. Defendant Brodeur reached into the Plaintiffs vehicle and manually put the vehicle into "Park".

23. Defendant Vlaun began to speak to the Plaintiff in Spanish, however the Plaintiff neither speaks nor understands the Spanish language.

24. Defendant Vlaun directed the Plaintiff to get out of vehicle, and to place his hands on the top of the vehicle.

25. Upon exiting the vehicle, the Plaintiff was extremely unsteady on his feet, disoriented and not fully responsive to the Defendant Officers' orders.

26. The Plaintiff's head was slouched forward, and he was unsteady and swaying on his feet.

27. Defendant Vlaun asked the Plaintiff whether he threw up, as a liquid could be observed near the Plaintiff's mouth, to which the Plaintiff responded "nah."

28. Defendant Brodeur radioed police headquarters and stated, "it's going to be for detox."

29. Contemporaneous to the Defendants removing the Plaintiff from his vehicle, the passenger Mr. Delacruz was standing on the sidewalk approximately ten (10) feet from the passenger side door on the sidewalk.

30. Officer Brodeur advised Officer Vlaun that Mr. Delacruz speaks Spanish.

31. Officer Vlaun approached Dani Delacruz on the sidewalk while Officer Brodeur remained standing with the Plaintiff outside the driver's side door of the Plaintiff's running vehicle.

32. Defendant Vlaun interviewed Delacruz in Spanish asking him what happened.

33. Mr. Delacruz told Defendant Vlaun that the Plaintiff passed by his drop off location, and that he observed that the Plaintiff "got stiff and BOOM" demonstrating to the Officer by outstretched stiff arms which were shaking.

34. Defendant Vlaun said "oh okay, so he had a seizure" acknowledging that it was in fact a medical event.

35. Defendant Vlaun walked back to Defendant Brodeur and the Plaintiff and advised that "he had a seizure," referring to the Plaintiff, to which Defendant Brodeur acknowledged.

36. Both Defendants instructed the Plaintiff to sit on the ground, however the Plaintiff continued to be disoriented and unable to respond to the Defendants' instructions.

37. Defendant Vlaun instructed Defendant Brodeur to "just put him in the car, fuck it."

38. As the Defendants were walking the Plaintiff to the police vehicle, Defendant Vlaun asked him if he spoke English, and the Plaintiff was unable to answer his question but made a groaning sound.

39. Defendant Vlaun asked the Plaintiff what had happened, and the Plaintiff mumbled responded "I don't know."

40. The Defendants attempted to walk the Plaintiff to a police cruiser but he was extremely unsteady on his feet and walked past the cruiser in an unsteady gait, while Defendant Vlaun was holding his left wrist and forearm.

41. Defendant Vlaun proceeded to wrap his arms around the Plaintiff's torso from behind and physically pick up the Plaintiff and turn him around to walk back towards the police vehicle

42. Defendant Vlaun attempted unsuccessfully to put the Plaintiff in the back seat of the police vehicle.

43. Defendants Vlaun and Brodeur with extreme force brought the Plaintiff down to the pavement.

44. The Defendants violently attempted to place the Plaintiff into handcuffs and to take him into custody.

45. While the Defendants were attempting to get handcuffs on the Plaintiff, he was screaming "I can't breathe. Get off of me. Get off, I can't breathe. Stop you are killing me. Stop I am gonna die. Help me. Stop. Let me go."

46. The Defendants screamed at the Plaintiff "Stop, stop fucking fighting" although the Plaintiff was not nor had not fought the Defendants.

47. Additional Providence Police Officers arrived on scene and they assisted Defendants Vlaun and Brodeur in handcuffing the Plaintiff, all while the Plaintiff was forced face down on the pavement screaming for help.

48. Plaintiff was repeatedly punched by the Defendants while he was screaming out in pain and distress.

49. Several officers held the Plaintiff in a prone position on the ground for over five (5) minutes while multiple officers were on top or aside of him, applying various amounts of pressure and attempting to manipulate his arms to handcuff him behind his back.

50. Throughout those five minutes, Plaintiff was screaming for help and crying out that the Defendants were hurting him.

51. Defendant Officer John Doe discussed with other Defendant Officers how the Plaintiff was on a cocaine called "Diamond" and the Defendant Officer stated, "he is geeking out on something…seems like the same batch."

52. Prior to Defendants forcefully bringing the Plaintiff to the ground, he had no visible injuries or open wounds, facial injuries, swelling or broken bones.

53. When Plaintiff was physically lifted off the ground by the Defendants, blood clearly was visible on his face, his head and on the pavement.

54. Defendant Officers forcefully shoved the Plaintiff into the back seat of a police cruiser while the Plaintiff was pleading with the Defendants stating, "I can't see nothing."

55. Plaintiff remained restrained in the rear of the cruiser while the Defendants spoke amongst themselves and cleaned the Plaintiff's blood off their arms and hands.

56. Defendant Vlaun told a senior officer at the scene "I had to pick him up and slam him" referring to the manner in which he how he assaulted the Plaintiff.

57. While in the police cruiser, the Plaintiff continued to yell and beg the Defendants to let him out of the vehicle.

58. During that time, the passenger, Mr. Dela Cruz and his girlfriend were questioned by other Defendant Officers on the scene, where they again informed the Defendants that the Plaintiff had a medical episode while driving his vehicle, as Mr. Dela Cruz again demonstrated with his arms and hands outstretched and shaking, in a manner consistent with an epileptic seizure.

59. The Plaintiff was not provided with medical assistance or medical aid at the scene, despite the Defendants being informed that he had suffered a seizure.

60. The Plaintiff was transported to Rhode Island Hospital in a police cruiser although a Providence Fire Department Rescue was on the scene.

61. Several Defendant Officers also responded to Rhode Island Hospital to assist the transporting officer.

62. At the hospital, several Defendant Officers stood around the cruiser while the Plaintiff remained in the back seat calling out for help.

63. Defendant Officer John Doe went over to the cruiser, opened the front door and yelled to the Plaintiff "I am going to pepper spray you right in the fucking mouth if you don't calm the fuck down."

64. The Plaintiff pleaded with the Defendants stating "Sir, I can't breathe, please, please" to which Defendant Officer John Doe responded, "You stupid motherfucker, shut up."

65. After securing a gurney from inside of the hospital and placing it next to the cruiser, in close proximity to the rear passenger door, Defendant Officer Michael Sullivan informed the Plaintiff that he was going to open the door.

66. Defendant Sullivan opened the back door of the cruiser without providing support or assistance to the Plaintiff who immediately fell out face first onto the pavement while his hands were handcuffed behind his back.

67. At least five other Defendant Officers stood by while the Plaintiff fell out of the vehicle without providing any assistance to him.

68. The Plaintiff was placed on a gurney while still handcuffed behind his back, while he was yelling out, "My hand, my hands, my hands. It hurts it hurts so bad, please my arm."

69. Inside the emergency room, the Defendants removed the handcuffs from behind Plaintiff's back and fastened them to the side railings of the gurney. Additionally, Defendant Officers shackled Plaintiff's ankles to the gurney.

70. One Defendant Officer said, "You know you were in a car accident, right?' to which the Plaintiff responded, "I do not know."

71. The Plaintiff was diagnosed and treated for having an epileptic seizure, fracture of the first right phalanx, and lacerations to his face which required sutures.

72. The Plaintiff had been previously diagnosed with having epilepsy and has had seizures in the past.

73. After receiving medical treatment, Plaintiff was transported back to the Providence Police Department for fingerprinting and mug shots, although he had not committed any crime.

74. Defendant Providence Police charged Plaintiff with one count of Resisting Arrest and one count of Simple Assault, as well as various motor vehicle violations (Leaving The lane of Travel, Operating a Motor Vehicle without Insurance, and Operating a Vehicle When Registration is Suspended).

75. Despite the Defendant Police Department charging the Plaintiff with Operating a Vehicle Without Insurance, Plaintiff's vehicle was in fact insured by AAA on the date of the accident and the evidence of said policy was in the vehicle at the time of the accident.

76. The Defendant Officers extensively searched the Plaintiff's vehicle at the scene of the accident and the Proof of Insurance was readily available to them.

77. Plaintiff was summoned to appear at Sixth Division District Court on September 6, 2023 to be arraigned on the false criminal charges brought by the Defendant Police.

78. After several community leaders requested that the Providence Police Department release the Defendant Officers' bodycam videos, Colonel Oscar Perez called the Plaintiff's cell phone on August 30, 2023, to set up a time to meet with him at the Providence Police Department.

79. Defendant Perez cautioned the Plaintiff that a release of the recordings could be embarrassing for him.

80. The Plaintiff did not meet with Colonel Perez, and the video recordings were released.

81. The Defendant Police Department released some of the videos to the media, which were broadcast on local television news stations.

82. City of Providence Mayor Brett Smiley and Defendant Perez reported to the news media that they had cleared the Officers of any and all wrongdoing, but for one officer who was disciplined for using profanities.

83. The City of Providence Solicitor, Steven Nelson, after a review of the criminal case, dismissed the two misdemeanor charges against the Plaintiff.

84. The Defendant Police Department Prosecution Officer dismissed all traffic violations against the Plaintiff.

85. At all times relevant to the events described in this Complaint, Plaintiff was in fear for his own safety, having been battered and assaulted by the Defendant Officers as evidenced in the videos from the scene.

86. At all times relevant to the events described in this Complaint, each of the Defendants identified above acted under color of law, within the scope of their employment.

87. As a result of the Defendant's unlawful actions, the Plaintiff suffered and continues to suffer physical injuries, including a broken bone and facial scarring.

88. As a result of the Defendant's unlawful actions, the Plaintiff suffered and continues to suffer from mental anguish and personal humiliation by the media coverage of the events on August 18, 2023.

89. As a result of the Defendant's unlawful actions, the Plaintiff suffered and continues to suffer mental anguish by being wrongfully detained and charged with crimes he did not commit.

## COUNT I

**Civil Rights Violation**
**Pursuant to  2 U.S.C.A. § 1983 - All Defendants**

90. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

91. That on or about August 18, 2023, Defendant Officers, while acting under color of law and in their official capacities, assaulted Plaintiff without cause or justification, therefore.

92. Said use of excessive force deprived the Plaintiff of the constitutional right to bodily security and liberty under the Fourteenth Amendment to the United States Constitution and was an unreasonable physical seizure of the Plaintiff under the Fourth Amendment of the United States Constitution.

93. As a result of the unwarranted use of excessive force, Plaintiff suffered grievous bodily injuries to his face, head and hands, mental anguish, and was deprived of his constitutional rights, all to his damage.

94. As a direct and proximate result of the conspiracy of the Defendants, the Plaintiff suffered loss of liberty, great mental anguish, humiliation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

95. As a direct and proximate result of the conspiracy of the Defendants, the Plaintiff was seized, arrested and charged with criminal offenses that he did not commit and was deprived of his right to be free from unreasonable and unlawful seizure, protection of the laws, due process rights to be free from arbitrary and unreasonable actions that are secured by the United States Constitution.

## **COUNT**

**Conspiracy to Violate Plaintiff's Civil Rights**
**Pursuant to  2 U.S.C.A. § 1983 - All Defendants**

96. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

97. Defendants, acting in concert with other co-conspirators, known and unknown, in their official capacity and under color of law, having conspired together and with a mutual understanding and acted to undertake a course of action that violated the Plaintiff's civil rights to wit:

    a. The Defendants agreed and acted intentionally to have the Plaintiff arrested, seized, deprived of his constitutional rights.

    b. The Defendants agreed and acted intentionally to have the Plaintiff charged with crimes he did not commit.

98. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of then truth.

99. As a direct and proximate result of the conspiracy of the Defendants, the Plaintiff suffered loss of liberty, great mental anguish, humiliation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

100. As a direct and proximate result of the conspiracy of the Defendants, the Plaintiff was seized, arrested and charged with criminal offenses that he did not commit and was deprived of his right to be free from unreasonable and unlawful seizure, protection of the laws, due process rights to be free from arbitrary and unreasonable actions that are secured by the United States Constitution.

## COUNT III

### Malicious Prosecution - All Defendants

101. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

102. In the manner described above, Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of employment, accused Plaintiff of criminal activity and initiated judicial proceedings against Plaintiff without any probable cause.

103. Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's Constitutional rights.

104. The false judicial proceeding against the Plaintiff were instituted maliciously, resulting in injury.

105. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth.

106. The judicial proceedings against the Plaintiff were terminated in his favor, in a manner indicative of his innocence.

107. As a direct and proximate result of the conspiracy of the Defendants, the Plaintiff suffered loss of liberty, great mental anguish, humiliation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## **COUNT IV**

### **Unlawful and/or False Arrest - All Defendants**

108. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

109. Defendants arrested Plaintiff without a scintilla of evidence that Plaintiff committed a crime.

110. Defendants intended to confine Plaintiff and restrict his freedom from restraint or movement.

111. Defendants did not have probable cause to effectuate the arrest of the Plaintiff.

112. Plaintiff was harmed by the Defendants arresting him without probable cause.

113. As a direct and proximate result of the conspiracy of the Defendants, the Plaintiff suffered loss of liberty, great mental anguish, humiliation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT V

### Assault and Battery - All Defendants

114. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

115. While suffering a medical emergency after a motor vehicle accident, Defendant Officers assaulted and battered the Plaintiff causing him to suffer a broken bone and facial lacerations.

116. Instead of providing the Plaintiff with necessary medical aid, the Defendant Officers brought the Plaintiff violently to the pavement, face first, and struck him about the head and face, in an unlawful attempt to handcuff him and to seize his person.

117. Plaintiff was in reasonable fear of imminent bodily harm.

118. The Defendant Officers' acts were intended to cause and did in fact cause an unconsented, offense contact and trauma upon the body of the Plaintiff.

119. As a direct and proximate cause of Defendant Officers' assault and battery upon the body of the Plaintiff, Plaintiff suffered serious physical injuries, fear and mental anguish.

## COUNT VI

### Intentional Infliction of Emotional Distress - All Defendants

120. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

121. Defendant Officers' actions of violently slamming the Plaintiff on the pavement, and repeatedly striking him in the face and head were done intentionally.

122. Defendant Officers' conduct was extreme, outrageous, and shocking of the conscious.

123. As a direct and proximate result of the Defendants' conduct, Plaintiff suffered and continues to suffer extreme emotional distress that no reasonable person could be expected to endure.

## COUNT VII

### Negligence – All Defendants

124. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

125. Defendant Officers, after being informed that the Plaintiff had suffered an epileptic seizure, failed to provide him with the necessary medical aid, although a Providence Fire Department Rescue was at the scene.

126. Defendant Officers, after being informed that the Plaintiff had suffered an epileptic seizure, failed to recognize that his confusion and inability to understand the Defendant Officers was the result of a recent epileptic seizure.

127. Instead of rendering the Plaintiff the necessary medical aid after a seizure, the Defendant Officers did not allow for him to be examined by medical personnel at the scene of the accident, but instead seized his person and arrested him unlawfully.

128. That as a direct and proximate cause of the Defendant Officers' negligent actions, the Plaintiff was denied necessary medical aid and suffered great physical injury, fear and mental anguish.

## COUNT XI

### Failure to Train or Supervise
### Colonel Oscar Perez and the Providence Police Department

129. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

130. Defendant City of Providence has grossly failed to train its Police Officers in the fundamental law of arrest, seizure, prosecution and racial profiling in that members of its police force engaged in a practice of using excessive force in bringing unwarranted criminal charges without due consideration for the protection of the Plaintiff's civil liberties.

131. Defendant City of Providence and Defendant Colonel Perez ratified the behavior of the Defendant Officers by failing to discipline them and by engaging in a policy of charging persons experiencing a medical emergency, as they did with the Plaintiff, in an effort to avoid liability for their unlawful conduct.

132. As a direct and proximate result of the Defendant Officers' unlawful actions as described above, Plaintiff was seized, beaten, arrested and charged with criminal offenses that he did not commit, and had excessive force used against him.

133. As a direct and proximate result of the unlawful actions of the Defendants, the Plaintiff suffered loss of liberty, great mental anguish, humiliation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT XII

### Respondeat Superior Liability
### Colonel Oscar Perez and the Providence Police Department

134. Plaintiff incorporates each paragraph of this Complaint as if it is fully restated here.

135. Defendant Colonel Perez, acting in his official capacity as Colonel of the Providence Police Department, knew, or should have known that the conduct of the Defendant Officers was likely to occur.

136. Defendant Colonel Perez failed to take any preventative or remedial actions to guard against the conduct of the Defendant Officers as described herein. Had he taken such measures, Plaintiff would not have suffered the deprivation of his rights as described herein. The failure of Colonel Perez amounted to deliberate indifference which directly caused the deprivations suffered by the Plaintiff. Defendant Colonel Perez failed to train, supervise and discipline the Defendant officers, and said failure caused Plaintiff's damages.

137. After the Plaintiff suffered excessive force, which caused facial lacerations and a broken bone, Defendant Colonel Perez participated, directly or indirectly, in the arrest and prosecution of the Plaintiff.

138. As a direct and proximate result of the above described unlawful and malicious acts of Defendant Colonel Perez, Plaintiff was deprived of his right to be secure, in his person, to

equal protection of the laws and due process of law, in violation of the Constitution of the United States and the State of Rhode Island Constitution.

**WHEREFORE,** Plaintiff, TAHJ T. EDDINGTON, respectfully requests that this Court enter a judgment in his favor and against the Defendants CITY OF PROVIDENCE, PROVIDENCE POLICE COLONEL OSCAR PEREZ, OFFICERS MANUEL VLAUN, OFFICER ANDREW BRODEUR, OFFICER MICHAEL SULLIVAN, OFFICERS JOHN DOE AND OFFICER JANE DOE as follows:

1. Declaring as unconstitutional the arrest, seizure, beating and prosecution of the Plaintiff.

2. Further, Plaintiff Tahj T. Eddington demands the following relief jointly and severally against the Defendants:

   a. Compensatory damages in the amount of $2,000,000;
   b. Punitive damages in the amount of $3,000,000;
   c. Attorney's fees and costs pursuant to 42 U.S.C. § 1983;
   d. Such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, TAHJ T. EDDINGTON, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

    Respectfully Submitted,
    TAHJ T. EDDINGTON
    By his Attorneys,

    */s/ Bethany Macktaz*
    Bethany Macktaz, Esq. (#5214)
    MACKTAZ LAW
    536 Atwells Avenue
    Providence, Rhode Island 02909
    (860) 933-7556 – Tel.
    bethany@macktazlaw.com

                    ***/s/ Lisa S. Holley***
                    Lisa S. Holley, Esq. (#6606)
                    LISA HOLLEY LAW
                    536 Atwells Avenue
                    Providence, Rhode Island 02909
                    (401) 400-2850 – Tel.
                    lisa@lisaholleylaw.com

**Dated: January 7, 2025**